IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILEY FISHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:10-CV-189-WKW [WO] |
| | ) | |
| THE CITY OF MONTGOMERY, | ) | |
| a municipality, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

In this lawsuit, Plaintiff Wiley Fisher claims that officers with the City of Montgomery Police Department unlawfully dragged, dropped, transported, and detained him after the vehicle he had been riding in was stopped and he was arrested. He brings this action against Antonio Loria, Jeremy K. Peterson, and Dan Stallworth, individually and in their official capacities as officers employed by the Montgomery Police Department and against the City of Montgomery (the "City"). Mr. Fisher alleges 42 U.S.C. § 1983 claims against Defendants for alleged violations of his Fourth, Eighth and Fourteenth Amendment rights.[1] His claims arise from both the actions of the individual officers and the policies and customs of the City of Montgomery Police Department.

---

[1] The Complaint also includes claims against the police officers for a violation of Mr. Fisher's Sixth Amendment rights as well as for assault and battery and a claim against the City of Montgomery for negligent training and supervision. (Compl. ¶¶ 22-32.) In his summary judgment response, Mr. Fisher agrees to voluntarily dismiss his Sixth Amendment claim and all of his state law claims, and he does not oppose Defendants' motion for summary judgment on those claims. (Doc. # 25, at 13.) Accordingly, no analysis is necessary as to the Sixth Amendment and state law claims.

Before the court is Defendants' motion for summary judgment (Doc. # 20), which is accompanied by a supporting brief and an evidentiary submission (Doc. # 21, Exs. 1A-C). Mr. Fisher filed a response in opposition (Doc. # 25) and an evidentiary submission (Doc. # 25, Exs. 1A-C), to which Defendants replied (Doc. # 26). After careful consideration of the arguments of counsel, the applicable law and the record as a whole, the court finds that the motion is due to be granted.

## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction). Personal jurisdiction and venue are adequately pleaded and not contested.

## III.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation and internal quotation marks omitted); *see* Fed. R. Civ. P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for

summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P. 56(e)(2); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (citation and internal quotation marks omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498

3

F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 242 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*) (A plaintiff's "conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Thus, in cases where the evidence before the court is admissible on its face or can be reduced to admissible form and indicates there is no genuine issue of material fact, and where

the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact).

## IV.  FACTS[2]

While the material facts surrounding the arrest, transport, and detention of Mr. Fisher are hotly contested, at this juncture, Mr. Fisher's version of the events occurring on March 2-3, 2008, is credited.[3]

Mr. Fisher is a paraplegic who cannot walk and at the time of his arrest relied on a hand-powered wheelchair for mobility.  (Fisher Aff. 1 (Doc. # 25, Ex. 1).)  On March 2, 2008, Mr. Fisher and his teenage son W.T.F. were passengers in a gold Buick driven by Mr. Fisher's friend, Timothy Sneed.  (Fisher Aff. 1-2.)  Mr. Fisher was in the front passenger seat of the Buick, and W.T.F. was in the back seat.

Around that same time, Defendant Antonio Loria, a Lieutenant with the City of Montgomery Police Department, received a police radio call that a third party witness was currently following a gold Buick whose front passenger was smashing mail boxes with a bat

---

[2] The actual facts may be different than those stated here.  *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]acts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.  Nevertheless, for summary judgment purposes, [the] analysis must begin with a description of the facts in the light most favorable to the plaintiff.") (citation and internal quotation marks omitted).

[3] Mr. Fisher originally pled that the events in question occurred on or about March 3, 2008. (Compl. ¶ 9.)  The parties agree in their briefs, however, that Mr. Fisher was stopped and arrested on March 2, 2008.  (Doc. # 21, at 1; Doc. # 25, at 1.)

or stick.  (Loria Aff. 1 (Doc. # 21, Ex. 1A).)  Lt. Loria responded to the call, located a gold

Buick, and initiated an investigatory stop.[4]  (Loria Aff. 1.)  After the arrival of another police

vehicle, Lt. Loria approached the gold Buick.  (Loria Aff. 1.)  One of the Defendant police

officers then ordered the passengers in the gold Buick to exit the vehicle.  (Sneed Aff. 1

(Doc. # 25, Ex. 1B).)  Mr. Sneed exited the Buick through the driver's side window without

incident.  (Sneed Aff. 1.)  Mr. Fisher was also ordered to exit the vehicle, but Mr. Fisher

replied that he could not do so because he was a paraplegic.  (Fisher Aff. 2.)  Mr. Sneed

likewise told the officers that Mr. Fisher was paralyzed and could not exit the vehicle.

(Sneed Aff. 1.)  While telling the officers that he was a paraplegic, Mr. Fisher also informed

the officers that his wheelchair was in the trunk of the Buick.[5]  (Fisher Aff. 2.)

      Lt. Loria then observed Mr. Fisher reaching down into the floorboard of the vehicle

between his legs.[6]  (Loria Aff. 1.)  When Mr. Fisher was unable to exit the vehicle, he was

threatened by Defendant police officers with a drawn pistol pointed at his face.[7]  (Fisher Aff.

2.)  Mr. Fisher then placed his hands on the dashboard of the Buick.  (Fisher Aff. 2.)  After

---

[4] The gold Buick was still being followed by the third party witness, who is not identified by the parties.  (Loria Aff. 1.)

[5] A post-impoundment search of the Buick later revealed that Mr. Fisher's wheelchair was not in the vehicle.  (Peterson Aff. 3.)

[6] Mr. Fisher does not offer any contrary evidence to refute this fact.

[7] In his affidavit, Mr. Fisher alleges generally that "Defendants" threatened him with a drawn pistol.  (Fisher Aff. 2.)  He does not provide any other evidence of the identity of the officer who drew the pistol, or which Defendants were on the scene.  The affidavits of Lt. Loria, Officer Peterson, and Lt. Bullard confirm that they were in the vicinity of the gold Buick at the time of this incident.  (Loria Aff. 2; Peterson Aff. 2; Bullard Aff. 2.)

placing his hands on the dashboard, the officers very tightly handcuffed his hands behind his back and removed him from the Buick.  (Fisher Aff. 2.)  Once Mr. Fisher was removed from the Buick, Lt. Loria conducted a search of the front passenger floorboard of the Buick, where he found a machete and a black fanny pack.[8]  (Loria Aff. 2.)  At no time while he was in the Buick, however, did Mr. Fisher have access to the machete or attempt to reach for the machete.  (Fisher Aff. 2.)

To remove Mr. Fisher from the Buick, Lt. Bullard and Officer Peterson picked Mr. Fisher up and dragged him to a police car.[9]  (Fisher Aff. 2; Bullard Aff. 1.)  While dragging Mr. Fisher, the officers dropped him twice.  (Fisher Aff. 2.)  While Mr. Fisher was being lifted, dragged, and dropped, he was "hollering out with pain, begging, telling them that they were hurting [him]."  (Fisher Aff. 2.)  However, the officers did not respond to Mr. Fisher's pleas.  (Fisher. Aff. 2.)

The officers also had difficulty getting Mr. Fisher into the back of the police car.  (Sneed Aff. 2.)  Once he was in the back of the police car, Mr. Fisher's feet were shackled while his hands remained cuffed behind his back.  (Fisher Aff. 2.)  The officers also did not fasten Mr. Fisher's seatbelt.  (Fisher Aff. 2.)  With his hands cuffed behind his back, Mr. Fisher was unable to maintain his balance in an upright position and fell over in the back of

---

[8] Officer Peterson inspected the black fanny pack, locating Mr. Fisher's wallet, prescription pills, and 2.7 grams of marijuana.  (Peterson Aff. 2.)

[9] Prior to Mr. Fisher's removal from the Buick, Lt. Loria left the scene and turned control of the arrest over to Lt. Bullard, who is not a party to this lawsuit.  (Loria Aff. 2.)

7

the police vehicle.  (Fisher Aff. 2-3.)  Mr. Fisher then complained to the officer driving the vehicle, Defendant Peterson, that he was having trouble breathing.  (Fisher Aff. 2-3; Peterson Aff. 2.)  Defendant Peterson did not stop to provide any assistance to Mr. Fisher, and instead replied, "We will be there in a minute."  (Fisher Aff. 2-3; Sneed Aff. 2.)  Mr. Sneed was seated next to Mr. Fisher and told Defendant Peterson that he did not think Mr. Fisher could last a minute because of his difficulty breathing.  (Sneed Aff. 2.)  Mr. Sneed confirms that they arrived at the police station a few minutes later.  (Sneed Aff. 2.)

Upon their arrival at the police station, Defendant Peterson noted that Mr. Fisher was lying on Mr. Sneed's leg.  (Peterson Aff. 2.)  Subsequently, a City of Montgomery Fire Medic unit arrived in Mr. Fisher's vicinity, but the unit was told that Mr. Fisher was "o.k." and that it could leave.  (Fisher Aff. 3.)  Mr. Fisher was not provided any medical attention for his breathing difficulties or the alleged injuries resulting from his arrest by the police officers.  (Fisher Aff. 3.)

Defendant Peterson then placed Mr. Fisher on a dirty wheeled cart and rolled him into the police department.  (Fisher Aff. 3.)  Defendant Peterson attempted to place Mr. Fisher upright on the cart, but he kept falling over because he was still handcuffed.  (Sneed Aff. 2; Peterson Aff. 2.)  On one of those occasions, Mr. Fisher fell off the cart and hit his head on the concrete.  (Sneed Aff. 2.)   Mr. Fisher was also having breathing problems while being transported on the cart.  (Fisher Aff. 3.)

Mr. Fisher was booked into the City Jail on March 2, 2008.  (Fisher Aff. 3; Peterson Aff. 2.)  Lt. Loria, Officer Peterson, and Lt. Bullard thereafter had no further contact with Mr. Fisher.  (Loria Second Aff. 1 (Doc. # 26, Ex. 1A); Peterson Second Aff. 1 (Doc. # 26, Ex. 1B); Bullard Second Aff. 1 (Doc. # 26, Ex. 1C).)

Following the booking process, unknown parties removed Mr. Fisher's handcuffs and shackles, and placed him on the floor in a jail cell.  (Fisher Aff. 3.)  Mr. Fisher was housed in this jail cell from March 2 to March 3, 2008.  (Fisher Aff. 3.)  During this time, he was provided "little assistance" by the City's jail staff and he was allowed to urinate and defecate on himself.  (Fisher Aff. 3.)  Likewise, he was not provided medical care.  (Fisher Aff. 3.)  During this time, fellow inmates had to help Mr. Fisher clean himself of his own urine and feces.  (Fisher Aff. 3.)

On March 3, 2008, Mr. Fisher was transported from the City jail to the Montgomery County jail.[10]  (Fisher Aff. 3.)  For his trip to the Montgomery County jail, Mr. Fisher was handcuffed and shackled by unknown persons.  (Fisher Aff. 3.)  During that transport, Mr. Fisher was injured by these unknown persons because he was roughly handled, he was unable to sit upright during his transport, and therefore he slid to the floor of the police vehicle and experienced breathing problems.  (Fisher Aff. 3.)

As a result of Defendants' actions, Mr. Fisher alleges he has suffered physical and mental pain and suffering.  (Fisher Aff. 3.)  Due to the upper body injuries he sustained, he

---

[10] Montgomery County is not a party to this lawsuit.

can no longer use a hand-powered wheelchair.  (Fisher Aff. 4.)  He also developed a serious infection on his right lower arm.  (Fisher Aff. 4.)  Mr. Fisher was hospitalized for this infection from March 24, 2008 to April 4, 2008.  (Fisher Aff. 4.)  Mr. Fisher also suffered a series of mental injuries including mental anguish, sleep problems, and psychological fear of the City's police department, where both of his parents were previously employed.  (Fisher Aff. 4.)

This lawsuit commenced on March 3, 2010, against the City, Lt. Loria, Officer Peterson, and Officer Stallworth.[11]  The claims in the Complaint against these Defendants are as follows: (1) 42 U.S.C. § 1983 ("§ 1983") claim against Officers Loria, Peterson, and Stallworth in their individual and official capacities, alleging violations of the Fourth Amendment (excessive force) (Count I);[12]  (2) § 1983 claim against the City alleging violations of the Fourth Amendment (excessive force), Eighth Amendment (cruel and unusual punishment), and Fourteenth Amendment (substantive due process) (Count I); (3) a state law assault and battery claim against the individual officers (Count II); and (4) a state

---

[11] Mr. Fisher alleges in the Complaint that Officer Stallworth was involved in the traffic stop along with Lt. Loria.  (Compl. ¶ 9 (Doc. # 1).)  Mr. Fisher has produced no evidence of Officer Stallworth's involvement in any of the events in question in this case.  Nor has the court discerned any such evidence.

[12] Mr. Fisher's Complaint is a shotgun pleading.  Count I, his lone federal count, is entitled "Federal Claim: Violation of the Fourth and Fourteenth Amendment:  Count I: Excessive Force" but Mr. Fisher then makes reference to the Fourth, Sixth, Eighth and Fourteenth Amendments within the count.  (Compl. ¶¶ 18-19.)  Mr. Fisher's opposition to summary judgment makes clear he is pursuing the individual officers' alleged use of excessive force in violation of the Fourth Amendment (Doc. # 25, at 4-7),  and that he is pursuing municipal liability against the City for its custom or policy which proximately caused the alleged Fourth, Eighth, and Fourteenth Amendment violations.  (Doc. # 25, at 8-12.)

law negligent training and supervision claim against the City (Count III).  Mr. Fisher seeks

compensatory and punitive damages.  (Compl. ¶¶ 21, 26, 33.)  As stated earlier, only Mr.

Fisher's § 1983 claims against the Defendant police officers and the City of Montgomery are

at issue.  No equitable relief is sought.

## V.  DISCUSSION

Defendants argue that Mr. Fisher's case is barred by the statute of limitations because

he filed his action on March 3, 2010, while all of the acts complained of occurred on March

2, 2008.[13]  (Doc. # 21, at 17.)  Mr. Fisher claims in response that his action is not barred by

the statute of limitations because the events leading to his injuries spanned into March 3,

2008.  (Doc. # 25, at 12-13.)  Further, Defendants argue that Mr. Fisher has failed to raise

a genuine issue of material fact on his constitutional and state law claims.  Mr. Fisher

---

[13] Defendants did not plead the affirmative defense of statute of limitations in their answer, and the court denied an untimely request by Defendants to amend their answer.  (Doc. # 6; Doc. # 19.)  As in diversity of citizenship cases, here, "state law defines the nature of defenses, but the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." *Morgan Guar. Trust Co. of N.Y. v. Blum*, 649 F.2d 342, 344 (5th Cir. Unit B July 1981); *see also Moore v. Liberty Nat'l Life Ins.*, 267 F.3d 1209, 1217 (11th Cir. 2001) ("[W]hen borrowing the residual personal injury statute of limitations from a state, federal courts borrow no more from state law than is necessary to effect that limitations period.").  Under Federal Rule of Civil Procedure 8(c), a statute of limitations defense is an affirmative defense, subject to waiver if it is not timely raised in a responsive pleading. *Am. Nat'l Bank of Jacksonville v. F.D.I.C.*, 710 F.2d 1528, 1537 (11th Cir. 1983).  Notwithstanding his failure to plead the defense, a defendant may still raise an affirmative defense if it gives the opposing party notice of the defense and a chance to rebut it.  *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (holding that a defendant that has not pled the defense of statute of limitations may raise the defense in a motion for summary judgment) (internal quotations marks omitted).  This is because "if a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Id.*  Here, Defendants raised the defense in their motion for summary judgment, and Mr. Fisher responded.  Therefore, Mr. Fisher had both notice and an opportunity to rebut the defense.  Mr. Fisher has also not alleged any resulting prejudice, nor did he object to Defendants raising the affirmative defense.  Thus, Defendants' statute of limitations defense is not waived.

responds that he has met all of the requisites for his constitutional claims against the City and the individual Defendants.  (Doc. # 25, at 13.)  Mr. Fisher does not oppose the entry of summary judgment on his Sixth Amendment and state law claims.  *See supra* note 1.  For the following reasons, Defendants are due to be granted summary judgment.

This opinion proceeds in two parts.  Part V.A addresses the § 1983 statute of limitations bar of Mr. Fisher's claims for injuries accruing on March 2, 2008.  Part V.B explains why Defendants are due summary judgment on the merits of Mr. Fisher's timely § 1983 claims.[14]

A.    **The Statute of Limitations Bars Mr. Fisher's § 1983 Claims Accruing on March 2, 2008.**

"All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."  *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).  Mr. Fisher's claim was brought in Alabama, where the governing limitations period is two years.  *Id.*; Ala. Code § 6-2-38.

Though state law provides the source of the statute of limitations, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also Mullinax v. McElhenny*, 817 F.2d 711, 716 (11th Cir. 1987).  In § 1983 actions, "the statute of limitations does not begin

---

[14] Because Mr. Fisher's claims are either time barred or fail on the merits, the court need not reach the issue of qualified immunity raised by the individual Defendants.

to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *McNair*, 515 F.3d at 1173. "Plaintiff[] must know or have reason to know that [he or she was] injured, and must be aware or should be aware of who inflicted the injury." *Rozar v. Mullis*, 85 F.3d 556, 562 (11th Cir. 1996). "This rule requires a court first to identify the alleged injuries, and then to determine when plaintiff[] could have sued for them." *Id.* "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (internal quotation marks and citations omitted). If the accrual rule were otherwise, "the statute would begin to run only after plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Id.*

### 1.    *Mr. Fisher's § 1983 Claim Arising from His Arrest Is Barred by the Statute of Limitations.*

Mr. Fisher's injuries giving rise to his Fourth Amendment excessive force claim all occurred during his arrest on March 2, 2008. In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held

> that all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

*Id.* at *395; see also Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005) (stating that "the precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and

at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit," but assuming that the Fourth Amendment still controlled during the booking process at the jail).

Mr. Fisher's Fourth Amendment excessive force allegations are that the Defendant officers threatened him at gunpoint, tightly handcuffed him, dragged him from the vehicle, dropped him twice, handled him roughly while placing him in the vehicle, failed to fasten his seatbelt resulting in his falling over, and allowed him to fall off the cart while pushing him into the City jail.  (Doc. # 25, at 5-7.)  Mr. Fisher's own affidavit confirms that all of these events occurred on March 2, 2008, that he was aware of the injuries as they occurred, and that he was concomitantly aware of the individuals who were inflicting those injuries.  (Fisher Aff. 1-3.)  Mr. Fisher could have sued for a Fourth Amendment excessive force violation as soon as those injuries occurred during his arrest on March 2, 2008, and therefore his excessive force claim accrued on that date.  *Wallace*, 549 U.S. at 388 (describing the general accrual rule that a plaintiff can file suit as soon as the allegedly wrongful conduct occurs, so the statute of limitations normally commences to run from that date).  Because Mr. Fisher did not file suit until March 3, 2010, his excessive force claim was not brought within the two-year period required by Alabama Code § 6-2-38(l).  Mr. Fisher has made no argument to toll the statute of limitations on his excessive force claim.  Thus, Mr. Fisher's § 1983 Fourth Amendment claim, against the individual officers and the City, arising out of his arrest, transport, and booking into the City jail are barred by the statute of limitations.

14

2.      ***Mr. Fisher's § 1983 Claims Arising from His Stay in the Jail Cell and Transport to the Montgomery County Jail Are Not Barred by the Statute of Limitations.***

Mr. Fisher's remaining § 1983 claims arising from his detention in the City jail on March 2-3, 2008 and his transport to the Montgomery County jail on March 3, 2008 are not barred by the statute of limitations.

First, Mr. Fisher's evidence is that the City jail allowed him to urinate and defecate on himself while detained there from March 2 to March 3, 2008. As a threshold matter, his March 3, 2010 suit is timely as to the injuries that occurred in the City jail on March 3, 2008. Whether Mr. Fisher's denial of medical treatment claim arising from his stay in the City jail on March 2, 2008 is timely turns on the applicability of the continuing violation doctrine. The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001). When the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run at the time the unlawful conduct ceases. *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974) (holding that a § 1983 action brought by a former mental patient for continuous civil confinement without psychiatric treatment did not accrue until the patient was released), *vacated on other grounds*, *O'Connor v. Donaldson*, 422 U.S. 563 (1975); *Santiago v. Lykes Bros. S.S. Co.*, 986 F.2d 423, 426 (11th Cir. 1993) (discussing *Donaldson*). "The critical

distinction in continuing violation analysis . . . is whether the plaintiff[] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (quoting *Knight v. Columbus, Ga.*, 19 F.3d 579, 580-81 (11th Cir. 1994)) (internal quotation marks omitted). When the plaintiff proves a continuing violation, the plaintiff may "recover for any violations for which the statute of limitations has not expired." *Knight*, 19 F.3d at 581. Mr. Fisher's allegations of constitutional violations for the City's medical inattention during his jail cell confinement from March 2 through March 3, 2008 constitute a continuing injury that did not accrue until he was removed from the jail cell on March 3, 2008.

Second, Mr. Fisher filed his suit on March 3, 2010, within two years of his March 3, 2008 transport to the Montgomery County jail. Thus, his Eighth and Fourteenth Amendment claims for denial of medical treatment in the City jail are not barred by the statute of limitations.

**B.    Defendants Are Due Summary Judgment on Mr. Fisher's Remaining Claims.**

Mr. Fisher's remaining, timely claims arise out of his March 2-3, 2008 confinement in the City jail and his transport to the Montgomery County jail on March 3, 2008. Defendant police officers are due to be granted summary judgment on these claims because there is no genuine issue of material fact that they had any involvement with Mr. Fisher during these events. The City is likewise due to be granted summary judgment because Mr.

Fisher has not carried his burden to raise a genuine issue of material fact of municipal liability.

### 1. There is No Genuine Issue of Material Fact that Defendant Police Officers Had Contact with Mr. Fisher After March 2, 2008.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). "To survive a motion for summary judgment, there must be some evidence of the personal involvement of each defendant in the alleged constitutional deprivation." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). In the Eleventh Circuit, to prevail on the merits in a § 1983 action against a defendant in his individual capacity, the plaintiff is "required to show that [the defendant was] personally involved in acts or omissions that resulted in the constitutional deprivation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Further, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotations marks and citations omitted). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*

Mr. Fisher has failed to raise a genuine issue of material fact that the Defendant police officers were personally involved in the events giving rise to his timely allegations of constitutional deprivations.  The unrefuted evidence shows that Officers Loria and Peterson did not have any contact with Mr. Fisher after booking him into the City jail on March 2, 2008.  (Loria Aff. # 2 ("I had no contact with Wiley Fisher after he was booked into the Montgomery Municipal Jail on March 2, 2008."); Peterson Aff. # 2 ("I had no contact with Wiley Fisher after he was booked into the Montgomery Municipal Jail on March 2, 2008.").) Mr. Fisher has not produced any evidence that Defendant Stallworth had any contact with him at all.  Further, Mr. Fisher has not produced any evidence that reveals the identity of the police officers, corrections officers, or other employees involved in his detention in the City jail on March 2-3, 2008.  Likewise, Mr. Fisher has not produced any evidence of the identity of any person involved in his transport to the Montgomery County jail on March 3, 2008.  Nor has Mr. Fisher produced any evidence or made any argument that the Defendant individual officers were involved in a role sufficient for supervisory liability under § 1983.  Thus, Defendant police officers are due summary judgment on Mr. Fisher's remaining claims against them.

2.       *There is No Genuine Issue of Material Fact on the City of Montgomery's Municipal Liability for the Injuries Accruing on March 3, 2008.*

Mr. Fisher's only remaining claims are his Eighth and Fourteenth Amendment claims against the City on a theory of municipal liability for its custom or policy which allegedly

caused his injuries during his stay in the City jail and his transport to the Montgomery County jail.

Mr. Fisher's remaining claims must proceed under the Fourteenth Amendment, not under the Eighth Amendment.  "[T]he Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees."  *Snow ex. rel Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1268 (11th Cir. 2005) (internal quotation marks omitted). "Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).  Nevertheless, the applicable standard is the same, "so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Id.*

"If a city employee violates another's constitutional rights, the city may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 123 (1992). "Section 1983 liability only attaches where 'the failure to train amounted to 'deliberate indifference' to the rights of persons with whom the police come into contact.'" *Garczynski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009) (quoting *Collins*, 503 U.S. at 123-24).

 "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that

constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Thus, "analysis of a [governmental entity's] custom or policy is unnecessary . . . when no constitutional violation has occurred." *Garczynski*, 573 F.3d at 1170; *see also Barnwell v. Douglas Cnty., Ga.*, 390 F. App'x 862, 864 (11th Cir. 2010), *cert. denied*, 2011 WL 55437 (Jan. 10, 2011); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (Absent a constitutional violation by a deputy, the Sheriff and the City could not be held liable under a theory of municipal liability.); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) (An inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.); *Roach v. City of Fredricktown, Mo.*, 882 F.2d 294, 297-98 (8th Cir. 1989) (Where the plaintiffs have not proven that specific constitutional rights were violated, there can be no municipal liability.).

The underlying constitutional violation is addressed first.  To prevail on a Fourteenth Amendment claim of deliberate indifference to serious medical needs by prison officials, a "[p]laintiff must prove both an objectively serious medical need and that a [d]efendant acted with deliberate indifference to that need." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).  To establish deliberate indifference, a "[p]laintiff must show that a [d]efendant had (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Id.*  Because Mr. Fisher has not produced any evidence of the identity of the individuals causing his violation, the court is unable to conduct the

20

threshold inquiry into whether there exists an underlying constitutional violation for a deliberate indifference to a medical need.

For a pretrial detainee, a prison official's use of "force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Skritch v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Similarly, the court is at a loss of how it can conduct an inquiry into whether an officer had malicious intent in applying force without evidence of that officer's identity. *Id.* (To determine if force was applied maliciously and sadistically, the court examines factors including: "the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."); *Bozeman v. Orum*, 422 F.3d 1265, 1272 n.11 (11th Cir. 2005) (noting that an officer's words are probative of his or her subjective state of mind and are relevant to the inquiry into good faith use of force); *see also Hale*, 50 F.3d at 1582; *Williams*, 781 F.2d at 323. Because Mr. Fisher has not produced evidence necessary to raise a genuine issue of material fact on the underlying constitutional violations, the City is due summary judgment on Mr. Fisher's remaining Fourteenth Amendment claims.

## VI.  CONCLUSION

Accordingly, it is ORDERED that Defendants' motion for summary judgment (Doc.

# 20) is GRANTED.  A separate judgment will be issued.

DONE this 17th day of February, 2011.


            /s/ W.  Keith Watkins
         UNITED STATES DISTRICT JUDGE